1  JOHN W. TOWER, ESQ. #106425
2  LAW OFFICE OF JOHN W. TOWER
   2211 Encinitas Blvd., 2nd Floor
3  Encinitas, CA  92024
4  (760) 436-5589 / Fax (760) 479-0570
5  Towerlawsd@gmail.com

6  Attorneys for Plaintiff
7  CLEANQUEST, LLC

8

9

10     **UNITED STATES DISTRICT COURT  CENTRAL DISTRICT OF**

11            **CALIFORNIA, SOUTHERN DIVISION**

12

13  CLEANQUEST, LLC., a California          )  **Case No.:  8:23-CV-00148-JWH-ADS**
    limited liability company               )
14                                           )  **THIRD AMENDED COMPLAINT**
                                             )  **FOR BREACH OF IMPLIED**
15              Plaintiff,                   )  **CONTRACT, QUANTUM MERUIT,**
16       vs.                                 )  **VIOLATION OF BUSINESS AND**
                                             )  **PROFESSIONS CODE SECTION**
17  UNITED HEALTHCARE INSURANCE              )  **17200, VIOLATION OF ERISA AND**
    COMPANY, a corporation; UNITED           )  **JURY DEMAND**
18  HEALTHCARE SERVICES, INC., a             )  **[FRCP RULE 15(a)(2)]**
    corporation; UNITED BEHAVIORAL          )
19  HEALTH operating under the brand         )
20  name OPTUM, and DOES 1 through 10,       )
    inclusive,                               )
21                                           )
22              Defendants.                  )
                                             )
23                                           )
                                             )
24                                           )
                                             )
25                                           )
                                             )
26                                           )
                                             )
27

28

Plaintiff certifies that venue is proper in this court as to all Defendants because this is the venue district in which the contracts were formed, where the obligations of the parties were to be performed, where the contracts were breached and where the injuries and damages occurred.

Plaintiff alleges as and for its claims for relief as follows:

## PRELIMINARY ALLEGATIONS

1.     Plaintiff CLEANQUEST, LLC is a California limited liability company authorized to do and doing business in the City of Irvine, County of Orange, State of California and was at all times herein mentioned doing business as a  toxicology testing laboratory and provided services which were or should have been covered by ERISA health insurance plans which Plaintiff is informed and believes and thereon alleges were drafted, provided, sponsored, supplied, underwritten, administered and/or implemented by Defendants and/or Defendants alter egos, related, or parent companies.

2.     Plaintiff is informed and believes and thereon alleges that Defendants UNITED HEALTHCARE INSURANCE COMPANY, Defendant UNITED HEALTHCARE SERVICES, INC and Defendant UNITED BEHAVIORAL HEALTH operating under the brand name OPTUM are corporations authorized to do and doing insurance business in the city of San Diego, County of San Diego, State of California, within the jurisdictional boundaries of this court. These Defendants shall be collectively referred to as "United."

3.     Plaintiff is informed and believes and thereon alleges that Defendants DOES 1 through 10 are somehow related to and/or controlled by the named Defendant and are related entities that were somehow involved in the issuing of the plans and/or the handling of the claims described herein.  The true names and capacities of the Defendants sued herein under Section 474 of the Code of Civil Procedure as DOES 1 through 10 are unknown to Plaintiff who therefore sues said Defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of

the fictitiously named Defendants is responsible in some manner for the events herein referred to and caused the damages hereinafter alleged.

4.    Plaintiff is informed and believes and thereon alleges that each Defendant is and was at all times herein mentioned acting as the agent, employee, related entity and/or alter ego of each of the remaining Defendants and at all times acted within the scope and authority of said agency, employment and/or other relationship.

5.    At all times herein mentioned, Plaintiff is informed and believes that numerous patients for which it conducted laboratory testing were insured and being treated for substance use disorders pursuant to ERISA health insurance plans that Plaintiff is informed and believes and thereon alleges were drafted, issued, underwritten and/or administered by Defendants and/or said Defendants' predecessor(s),assignor(s), agent(s), alter ego(s) or related entities, including the DOE Defendants herein. There are 166 patients/insureds whose claims are at issue herein who were covered for the laboratory testing performed by Plaintiff. A detailed redacted schedule of these claims including dates of service, applicable plan type and CPT billing code is attached hereto as Exhibit A. Additional confidential HIPAA protected information corresponding to the patient numbers including patient names, dates of birth and subscriber ID's, has been provided in an unredacted schedule directly to counsel for Defendants in confidential private manner.  Defendants wrote, issued and/or administered the plans, are in possession of same and are familiar with all terms and conditions. In addition, as to any exhibits to this third amended complaint with redactions, unredacted copies have been provided to Defendants, and Plaintiff is making an application to file unredacted versions of those exhibits concurrent with the filing of this third amended complaint.

6.    Representative copies of the applicable partial ERISA healthcare plans for Centric Brands and Tesla are attached hereto as Exhibits B and C respectively. These are the exact incomplete documents that Defendants sent to Plaintiff for the associated patients when Plaintiff requested copies of plan documents after claims

processing and prior to the filing of this lawsuit. For completeness, Plaintiff has attached a full copy of the Tesla healthcare plan which it recently obtained from sources other than Defendants as Exhibit D. These ERISA plans provide coverage for out-of-network independent laboratory testing and are representative of the terms and conditions of the Defendants plans at issue in this litigation. Additionally, in Exhibits H through R Plaintiff has provided a document compilation packet for the patients identified herein in the fourth cause of action with the associated plan document or plan document excerpts provided by the Defendant, as well as other relevant documentation. While the subject plans were in effect, Plaintiff provided laboratory toxicology testing to the patients and Defendants insureds referred to above who had insurance coverage applicable to the laboratory testing done by Plaintiff. Plaintiff provided laboratory toxicology testing for the patients and submitted claims for payment under CPT code 80307 in accordance with the terms and conditions of the insurance plans. With regard to the Defendants herein, Plaintiff is an out-of-network provider. An out-of-network provider is one that is not part of the Defendant's preferred network and has not agreed to any terms associated with the operation of the Defendant's business. In addition, the substance use disorder treatment facilities and physicians treating the patients are also out-of-network providers. Plaintiff obtained patient assignment/power of attorney agreements which authorized Plaintiff to act on the patient's behalf in all regards, including obtaining plan documentation, as well as handling claims and appeals under ERISA plans. A representative redacted version of one of the actual assignment/power of attorney forms is attached hereto as Exhibit E. Defendants adopted the American Society of Addiction Medicine Criteria (ASAM) as their standard for substance use treatment and ancillary services. Plaintiff provided covered medically necessary laboratory toxicology testing services according to the recommended standards of ASAM and has performed all conditions, covenants and promises required to be performed in accordance with the plans/polices/agreements

referred to herein above except, if applicable, those that have been excused, waived or are otherwise inapplicable.

7.      Plaintiff had a history and course of dealing with Defendants whereby Defendants paid Plaintiff consistently for its laboratory services. Without any prior notice, Defendants either suddenly stopped paying claims or made low and erratic claim payments. These payment patterns are shown in the spreadsheet prepared by Plaintiff attached hereto as Exhibit F. The Billed Charge Reimbursement Percentage equals the amount paid by the Defendants divided by the amount billed by the Plaintiff. The amount increased dramatically from 2019 to 2020. Then suddenly in 2021 the Billed Charge Reimbursement Percentage dropped dramatically to one tenth of the previous year and remained low in 2022. Further, Exhibits H through R underscore how the Defendant's often paid disparate amounts for the same patient during the same episode of care. Exhibits H through R are document compilations for the patients identified herein in more detail which include claims, EOBs, an appeal log, and plan excerpts, as well as the plan information provided by the Defendant. (Please note that Exhibits G though R, X, AA and BB are redacted. Unredacted copies of Exhibits G through R and X have been provided to counsel for Defendants and Plaintiff is making an application to file unredacted versions of Exhibits G through R and X under seal concurrent with the filing of this third amended complaint.) The erratic and inconsistent payment patterns are also evident from Exhibit A. These erratic and inconsistent payment patterns cannot be explained away by deductibles, co-insurance, or co-payments. The disparate payment amounts are often driven by disparate allowed amounts or improper denials by the Defendants. When claims were not paid or underpaid, Plaintiff submitted proper and timely appeals based on the patient assignment/power of attorney agreements in accordance with the Defendants applicable procedures. As a representative sample, Exhibits H through R contain appeal logs which show Plaintiff exhausted the internal appeals process of the Defendants. The appeal logs are generated from the Plaintiff electronic health record

system AdvancedMD, and show the extraordinary efforts Plaintiff performed in providing requested records and appealing denied or wrongfully underpaid claims.

8.     Within the past two years, at Orange County, California, the Defendants breached their contractual obligations and/or committed other wrongful acts and omissions by refusing to pay Plaintiff based on the plan/policy provisions, the previously paid historical rate, and/or the reasonable value of the services but instead denied claims paying nothing at all, or paid a different and significantly lower amount for the laboratory toxicology testing services. Plaintiff is informed and believes that the disparate/erratic daily payment and allowed amounts are not in compliance with Defendants plans/policies, rates paid on other consistently paid claims (based on billed amounts) and/or the reasonable value of the services, but are paid at much lower unsustainable and unreasonable amount. Plaintiff is informed and believes and thereon alleges that United has denied claims based upon specious medical necessity and place of service assertions thereby refusing to make payments on claims. Plaintiff does not determine medical necessity. Medical necessity is determined by the ordering or treating physician who ordered the tests at issue herein. Plaintiff processes the order through highly complex clinical laboratory machines, analyzes test results, and provides a report to the ordering physician. When sending claims to United, Plaintiff used the CMS prescribed place of service code 81 for independent laboratories. When United demanded that Plaintiff use an inappropriate place of service code (55 or 57), Plaintiff submitted claims with these codes and United rejected them. Additionally, the correct place of service code 81, which United has not reimbursed consistently, is universally used and recognized in the laboratory testing industry and accepted by other major insurance companies, including CMS. Place of service code 81 is the place where the laboratory services are performed or rendered. CMS is the owner of the place of code set that is used by the National Uniform Claims Committee (NUCC), which was created to develop a standardized data set for use by the non-institutional health care community to transmit claim and encounter information to

and from all third-party payers. The NUCC is chaired by the American Medical Association (AMA), with the Centers for Medicare and Medicaid Services (CMS) as a critical partner. The committee is a diverse group of health care industry stakeholders representing providers, payers, designated standards maintenance organizations, public health organizations, and vendors.   The Defendants have representation, and/or are members of the NUCC, which states that 81 is the place of service for tests performed or rendered at an independent clinical laboratory like the Plaintiff. The Defendants quote the NUCC and CMS in their Reimbursement Policy Number 2024R0113C attached as Exhibit V, which states in part that "…The NUCC 1500 Health Insurance Claim Form Reference Instruction Manual for Form Version 02/12 provides instruction for the completion of the 1500 Health Insurance Claim form…" (Exhibit V, page 1.) United also claims that Plaintiff should be paid under an inapplicable Medicare Physician Fee Schedule, when as a Clinical Laboratory it is paid pursuant to the Clinical Laboratory Fee Schedule. The MLN Fact Sheet: Clinical Laboratory Fee Schedule, attached hereto as Exhibit Y, confirms that the Clinical Laboratory Fee Schedule is different from the Medicare Physician Fee Schedule, as well as explains that CMS reimburses a "nominal fee for specimen collection" and that independent laboratories are paid directly by CMS for diagnostic clinical laboratory tests (Exhibit Y at pages 1 and 2.). United has also erratically refused to respond to Plaintiffs requests for plan and other documents/information on which their claim adjudication is based which Plaintiff is entitled to under ERISA, even though Plaintiff has authorizations, assignments and powers of attorney from the patients with claims at issue herein empowering Plaintiff to act on their behalf's and obtain the information. For all but a few exceptions, when Plaintiff asked Defendants for copies of plan documents, Defendants either ignored the requests, refused to provide documents, or in some cases sent letters claiming that they were not required to provide such documents (even though they are plan claims administrators and the drafters of the plans). On some occasions, Defendants included excerpts of plan

documents with the letters. An example of this is attached as Exhibit G which relates to patient LB who is identified as patient 14 on the Exhibit A spreadsheet. Reference to Exhibit G, at page 8, shows that laboratory testing is covered at 70% of the eligible expense. Exhibit A shows that at the time this lawsuit was filed, patient 14-LB had one claim paid at $31.07 and the other 7 not paid at all performed in May through July of 2022. However, Exhibit N (pages 10-13) shows that one year and a half after the dates of service, in December 2023, two of those claims were paid at $3,500 and $2,415. The claims also showed different allowed amounts for the same service for the same episode of care. Allowed amounts should be identical for paid claims. The plan document for patient AW who is identified as patient 158 on Exhibit A is contained within Exhibit J (pages 17-172). Under the schedule of benefits, the plan within Exhibit J (page 84) shows that laboratory testing is covered at 70% of the eligible expense. Reference to Exhibit A shows that nothing was paid on the claims for 10 dates of service for AW. These plans are representative examples of the plans for the patients with claims at issue in this lawsuit. Exhibits H – R also are representative examples of other patient plans with language that indicates that clinical laboratories are covered and should be reimbursed based upon an eligible expense, which should not vary within a particular plan. Yet, Exhibits H-R show that claims are either not paid at all or paid erratically, which is not based on an allowed amount for the eligible expense but rather random materially different amounts. Plaintiff is informed and believes and thereon alleges that United has committed other wrongful acts and/or omissions which will be subject to proof at the time of trial. As a direct and proximate result of the facts and conduct alleged herein, Plaintiff has been significantly damaged by unreimbursed and under reimbursed claims, and an unconscionable injury would result to Plaintiff if Defendants are not required to pay based on the terms and rates of applicable plans/policies, reasonable value of the services, and/or represented/agreed to rate. Based on their conduct, Defendants are

equitably estopped from denying the agreement/obligation to pay the reasonable value of the services, plan document rate or otherwise correct amount.

## FIRST CAUSE OF ACTION
### (Breach of Implied Contract)

9.    Plaintiff realleges and incorporates herein by reference every allegation contained in paragraphs 1 through 8, as though fully set forth herein.

10.    Based on a historical course of dealing and the facts alleged herein above, implied contracts exist between Plaintiff and Defendants whereby Plaintiff would provide laboratory toxicology testing to the insureds of Defendants referred to above in paragraph 5 and Defendants would pay for the services based on the plan document rate and/or the reasonable value of the services. Plaintiff has performed all conditions, covenants and promises required to be performed in accordance with the terms and conditions of said contracts/agreements except, if applicable, those that have been excused, waived or are otherwise inapplicable.

11.    Plaintiff submitted proper claims for the laboratory services under CPT code 80307; however, Defendants breached the agreements alleged herein, by way of example and without limitation, engaging in the conduct alleged herein, including but not limited to not paying claims or grossly under paying claims.

12.    As a proximate and direct result of the Defendants' breach of contract, Plaintiff has suffered, and will continue to suffer in the future, damages subject to proof at the time of trial.

## SECOND CAUSE OF ACTION
### (Quantum Meruit)

13.    Plaintiff realleges and incorporates herein by reference every allegation contained in paragraphs 1 through 12 as though set forth fully herein.

14.     As alleged herein Plaintiff performed laboratory toxicology testing for the insureds/patients whose claims are at issue herein who were insured with Defendants. By virtue of the communications and the course of dealing between Plaintiff and/or Plaintiff's referring facilities and the Defendants, Plaintiff was induced to provide laboratory toxicology testing services as alleged herein.

15.     Plaintiff provided the laboratory toxicology testing services for the patients/insureds identified herein in reasonable reliance upon the representations and conduct of the Defendants, including the verification of benefits for substance use disorder services obtained by referring facilities, and submitted claims to Defendants for those services under CPT code 80307.

16.     Plaintiff providing the laboratory toxicology testing services in reliance on the representations/communications/agreements and past and continuing course of dealing by Defendants was not gratuitous. Defendants benefitted from Plaintiff's services since the subject plans require Defendants to provide out-of-network options for laboratory testing to insureds under the plans. As a properly licensed independent testing laboratory, Plaintiff helps Defendants fulfil their obligation to provide adequate out-of-network coverage.

17.     The amounts that Plaintiff billed for the laboratory toxicology testing services were and are the reasonable value of those services and were and are the usual and customary rate for those services. Nevertheless, Defendants have refused to pay based on the reasonable value of the services and/or plan document rate as they represented and agreed, and instead have paid only a small fraction of the plan document rate and/or reasonable value of the services and often paid nothing at all for proper claims for covered medically necessary services.

18.     Under the circumstances, Defendants cannot conscientiously refuse to pay the balance due for the patients/insureds identified herein and Defendants should be required to pay the remainder of the reasonable value of the services or plan

document rate for the laboratory toxicology testing services provided by Plaintiff to
the insureds of Defendants.

## THIRD CAUSE OF ACTION

### (Violation of California Business and Professions Code section 17200)

19.    Plaintiff realleges and incorporates herein by reference every allegation
contained in all of the paragraphs in this third amended complaint as though set forth
fully herein.

20.    At all times relevant herein, California Business and Professions Code
section 17200 et seq. was in full force and effect. The Defendants have engaged in a
pattern of conduct including, by way of example and without limitation, the acts and
omissions alleged herein. This past and continuing conduct is unlawful, unfair and/or
fraudulent and constitutes an unfair business practice under California law.

21.    Defendants have used improper and/or inadequate information regarding
appropriate payment rates for the claims at issue herein, have acted in bad faith using
inconsistent allowed amounts for the payments, refused to pay for services in
accordance with the terms and conditions of the applicable plans/policies, engaged in
a continuing pattern of conduct to under pay and/or delay payment, demanded that
Plaintiff use inapplicable place of service coding for the laboratory services, refused to
acknowledge valid assignment/power of attorney agreements, and have refused to
provide plan documents even though they were provided with comprehensive ERISA
compliant assignment/power of attorney/authorizations to disclose agreements as
shown in Exhibit E attached hereto, and in other regards. The result is that Plaintiff in
this case, and other providers of laboratory services, are under severe financial risk
due to delayed cash flow and decreased profit from operations, and insured substance
use disorder patients are potentially exposed to significant financial liability, causing
irreparable harm for which Plaintiff does not have an adequate legal remedy. Plaintiff
has been and continues to be injured in fact by the conduct of the Defendants and

there is a causal link between the Defendants violation of Business and Professions Code section 17200 alleged herein and the injury in fact and/or restitutionary damages suffered by Plaintiff.

22.    The Defendants continue to engage in the conduct complained of herein that offend established public policy and which is unethical, oppressive, unscrupulous, unlawful, unfair, fraudulent and substantially injurious to the public at large in that, by way of example and without limitation, those battling substance use disorder who walk a fine line between sobriety and relapse are placed in a position where they are erroneously financially responsible for considerable sums of money for treatment received, and providers of substance abuse treatment are placed in a position where they may be required to pursue former patients for erroneous payment of substantial funds that were promised to be paid by Defendants. This places former patients at risk of relapse which ironically will increase the use of the substance use disorder benefit offered by the Defendants, and puts toxicology laboratories at financial risk due to underpayments for services provided in good faith. This conduct is particularly egregious because it essentially has the effect of removing out-of-network treatment options for insureds because out-of-network laboratory providers may have to shutter their organizations due to cash flow and profit concerns for services provided in good faith but not reimbursed appropriately. Plaintiff is informed and believes and thereon alleges that this is to Defendants advantage as the unfair business practice is designed to drive providers in-network through adhesion contracts. Providers who choose to be out-of-network understand that they bear the financial risk for the difference between their billed charge and the Defendant reimbursement. The reimbursement should be driven by the elements of the plan document, not arbitrary and capricious reimbursement policies that are not revealed to the patient or the out-of-network provider and are not part of the plan document. Even the elements in the plan documents are not clear about the reimbursement for out-of-network providers, often giving multiple ways a claim can be reimbursed without any associated payment

schedule. Identified as Patient 9 on Exhibit A, HA's underlying plan document states (Exhibit H at pages 24 and 25) Eligible Expenses for a non-Network provider are determined based upon one of the following:

- "Negotiated rates agreed to by the non-Network provider and either the Claims Administrator or one of the Claims Administrator's vendors, affiliates or subcontractors, at the Claims Administrator's discretion.
- If rates have not been negotiated, then one of the following amounts applies based on the claim type:
- Eligible Expenses are determined based on 140% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for Medicare for the same or similar service within the geographic market with the exception of the following:
  - 50% of CMS for the same or similar freestanding laboratory service
  - 45% of CMS for the same or similar Durable Medical Equipment from a freestanding supplier, or CMS competitive bid rates.
  - 70% of CMS for the same or similar physical therapy service from a freestanding provider."

This unfair business practice is to the detriment of the many unfortunate people who suffer from substance use disorder as it creates an environment where the patient has no idea what the Defendant will reimburse for out-of-network clinical laboratory services. If the patient chooses an in-network provider, they understand exactly what their payment will be. The business practice is designed to minimize the use of out-of-network providers while charging the patient elevated premiums for the ability to seek out-of-network services. These practices are one of the reasons there is a focus on enforcement of the Mental Health Parity and Addiction Equity Act. The Defendants have placed more stringent policies with respect to clinical laboratory drug screens

versus diabetic blood sugar screens as an example.  The Defendant's behavior is
particularly concerning during the ongoing national substance abuse/opioid crisis.

23.    The Defendants conduct, including misrepresenting the amount it will
pay for services in the plan document, paying substantially lower amounts for services
than it is obligated to in the plan document, demanding a place of service code
different than the testing location recognized by the NUCC and CMS, and ignoring
communications and requests for information, is unlawful and unfair, oppressive and
constitutes fraud against Plaintiff. It should be noted that United's refusal to recognize
the correct place of service code is not based on the plan documents, but rather
United's own internally developed policies. Plaintiff is informed and believes and
thereon alleges that Defendants conduct is in violation of California law, including but
not limited to California Business and Professions Code section 17200, et. seq.,
California Health and Safety Code sections 1371.37 and 1371.8, California Insurance
Code Sections 790.03 and 796.04, and California's parity laws.

24.    Plaintiff seeks compensation for the damages arising from the conduct
and activities of Defendants in violation of Business and Professions Code section
17200 as alleged herein, including but not limited to disgorgement of illegal profits
and/or ill-gotten financial gains, and restitutionary damages in an amount according to
proof at the time of trial. Plaintiff also requests injunctive relief enjoining Defendants
from engaging in the conduct alleged herein and appointment of a receiver over
Defendants pursuant to California Business and Professions Code section 17203.

25.    Plaintiff requests injunctive relief since the harm in not granting
injunctive relief greatly outweighs any possible harm to Defendants if injunctive relief
is granted that prohibits Defendants from engaging in the conduct alleged herein.
Because the Defendants have engaged in (and continue to engage in) an unfair,
unlawful and fraudulent business practice, Plaintiff is entitled to claim reasonable
attorney's fees in an amount to be determined according to proof at the time of trial.

# FOURTH CAUSE OF ACTION

## (Violation of ERISA-29 U.S.C. §1132 )

26.    Plaintiff realleges and incorporates herein by reference every allegation contained in paragraphs 1 through 25 as though set forth fully herein.

27.    This cause of action is brought on behalf of the 166 insureds/patients who have been specifically identified to Defendants in Exhibit A. Plaintiff is informed and believes that the plans for the 166 patients with claims at issue in this action are ERISA plans. Defendants are in possession of all of the plans for the 166 patients, and the few plan documents that Defendants have sent to Plaintiff or Plaintiff has obtained through other (burdensome) means are ERISA plans. By way of representative example, Exhibit J which includes the plan document for patient AW identified as patient 158 on Exhibit A, provides at Exhibit J, page 171:

> **"Statement of Employee Retirement Income Security Act of 1974 (ERISA)**
> **Rights**
> As a participant in the plan, you are entitled to certain rights and protections under the *Employee Retirement Income Security Act of 1974 (ERISA)."*

28.    Plaintiff has received valid assignments and powers of attorneys from these 166 patients which include the right to assert ERISA claims on behalf of the patients and brings this ERISA claim on their behalfs as the assignee and attorney in fact of these patients. Exhibit G contains a completed power of attorney/assignment form (pages 21-23) as part of an appeal package. In addition, a representative redacted version of one of the actual assignment/power of attorney forms for the patients with claims at issue herein is attached hereto as Exhibit E. An unredacted version of Exhibit E has been provided to Defendants counsel, and an unredacted version is to be submitted to this court through an application to file sealed documents.  The power of attorney/assignment form attached as Exhibit E provides in part at page 2:

- 15 -

*"A.POWER OF ATTORNEY FOR ERISA AND OTHER CLAIMS*

*I hereby appoint the Facility and its agents as my true and lawful attorneys-in-fact for the specific purpose of pursuing claims on my behalf against my insurer, employer benefit plan, or third-party administrator related to the services provided to me by the Facility. These claims shall include, but are not limited to:*

(1) *administrative appeals related to insurance benefits for services provided to me; and*

(2) *claims brought pursuant to federal law and/or the provisions of ERISA, whether such claims seek benefits, statutory penalties, or prospective, retrospective, monetary, legal, equitable, or other relief, including without limitation claims for breach of fiduciary duty and/or any claims related to the Mental Health Parity and Addiction Equity Act of 2008('Parity Act'); and*

(3) *claims brought pursuant to any state law, whether such claims seek benefits, statutory penalties, or prospective, retrospective, monetary, legal, equitable, or other relief, including without limitation claims related to bad faith, consumer protection and/or claims under any state law equivalent of the Parity Act.*

*Furthermore, I instruct the Facility to use whatever funds may be recovered as a result of actions brought on my behalf to reduce or eliminate any debt I may owe to the Facility and any related debt owed by the Facility for expenses incurred whilst seeking full reimbursement from my insurer, employer benefit plan, or third-party administrator.*

*I appoint the Facility as a true and lawful attorney-in-fact for the limited purpose of receiving, endorsing, and depositing to its account any checks, drafts, or money orders made payable to me for payments due under my health plan for services provided to me by the Facility."*

29.    Additionally, when claim forms were submitted for the patients, the 1500 forms showed in field 27 that the claims had been assigned to Plaintiff. (Please note the dates on the claim forms in the attached exhibits reflect the dates they were reprinted not the date the claim forms were originally submitted). A representative sampling of the claim forms are attached within Exhibits H-S. For example, claim forms can be found at pages 8-10 of Exhibit H.

30.    Plaintiff's patient assignors were subscribers and/or plan participants in ERISA healthcare insurance plans that Plaintiff is informed and believes and thereon alleges were and are drafted, issued, underwritten and administered by Defendants

- 16 -

and/or Defendants' predecessor(s)/assignor(s) who wrote the plan, are in possession of same and are familiar with its terms and conditions. When some of the claims were paid (or underpaid), payments were made directly to Cleanquest demonstrating that Defendants acknowledged and accepted the assignment, as is the custom and practice in the industry. Moreover, in the instances in which Defendants did provide requested documents, Defendants sent documents to Cleanquest in acknowledgement of the valid assignments/powers of attorneys as shown in the patient document compilations which are attached as Exhibits H-R, and Defendants letter with enclosures attached as Exhibit G. Defendants pick and choose what claims/appeals to respond to, and in the cases when they responded, Defendants typically only provided partial plan documentation (excerpts). As is shown in the email from UnitedHealthcare Associate General Counsel – Payment Integrity/SIU attached hereto as Exhibit Z, Defendants acknowledge that UnitedHealthcare had not processed Cleanquest's requests appropriately and that the issue would be addressed with the UnitedHealthcare Operations team (Exhibit Z, page 1). Unfortunately, Plaintiff's plan document requests are still not universally fulfilled by the Defendants, as shown in Exhibit AA (page 8) in which Defendants refused to respond to Cleanquest on the basis that its ERISA compliant authorization form was not adequate.

31.    While the subject plans were in effect, Plaintiff performed independent laboratory toxicology testing for its patients/Defendants insureds which was a covered benefit under the plans for which Plaintiff made proper claims for benefits by properly and timely submitting claims in accordance with the provisions of the policy. Copies of the industry recognized standard 1500 claim forms used by Plaintiff in submitting the claims are included in the attached Exhibits H through R. For example, please see claim forms at pages 8-10 of Exhibit H. As can be seen from these forms, in field 24B Plaintiff used place of service code 81 which is the appropriate place of service code for an independent testing laboratory per CMS.  CMS is the owner of the place of code set which is used by the National Uniform Claims Committee (NUCC), which

was created to develop a standardized data set for use by the non-institutional health care community to transmit claim and encounter information to and from all third-party payers. It is chaired by the American Medical Association (AMA), with the Centers for Medicare and Medicaid Services (CMS) as a critical partner. The committee is a diverse group of health care industry stakeholders representing providers, payers, designated standards maintenance organizations, public health organizations, and vendors.   The Defendants have representation and are members of the NUCC which states 81 is the place of service for tests performed or rendered at an independent clinical laboratory like the Plaintiff. The Defendants acknowledge the importance of following the guidance of the NUCC and CMS in their reimbursement policies, an example of which is Exhibit V.

32.    Plaintiff has performed all conditions, covenants and promises required to be performed in accordance with the terms and conditions of the applicable plans referred to herein above except, if applicable, those that have been excused, waived and/or rendered futile by Defendants.  In connection with the claims at issue herein, not only did Plaintiff submit timely and proper claims, but Plaintiff also submitted proper and timely appeals of claim denials and/or underpayments to Defendants as alleged herein. The patient packets attached as Exhibits H through R, and the appeal documents contained within Exhibit G, show that the Plaintiff exhausted the internal appeal process required by the Defendants.

33.    Within the past year of the original filing date of this action, at Irvine, California, the Defendants breached their contractual, ERISA and/or fiduciary obligations under the subject plans and violated the provisions of 29 U.S.C. §1132 by arbitrarily and capriciously failing to honor Plaintiff's claims under the healthcare insurance plans, by engaging in the conduct alleged herein, by refusing to respond to requests for plan documents and information, by failing to explain the reasons for non or under payment of claims based upon the underlying plan document, by arbitrarily and capriciously denying or grossly underpaying claims that were clearly covered in

accordance with plan documents, by ignoring and/or arbitrarily and capriciously denying reasonable and appropriate administrative claim denial or underpayment appeals, and in other regards as alleged herein and/or which will be shown according to proof.

34.    The plans at issue provide coverage for non-network independent laboratory testing. By way of representative example, the Centric SPD (partial) attached as Exhibit B provides in relevant part:

Exhibit B, at page 2:

**"Non-Network Benefits** apply to Covered Health Services that are provided by a non Network
Physician or other non-Network provider, or Covered Health Services that are provided at a non-Network facility…"

…

At Exhibit B, page 5-6:

"When Covered Health Services are received from a non-Network provider, Eligible Expenses are determined, based on:

Negotiated rates agreed to by the non-Network provider and either UnitedHealthcare or one of UnitedHealthcare's vendors, affiliates or subcontractors, at UnitedHealthcare's discretion.
If rates have not been negotiated, then one of the following amounts:

◆ For Covered Health Services other than Pharmaceutical Products, Eligible Expenses are determined based on available data resources of competitive fees in that geographic area.

◆ When Covered Health Services are Pharmaceutical Products, Eligible Expenses are determined based on **110%** of the published rates allowed by the *Centers far Medicare and Medicaid Services (CMS)* for Medicare for the same or similar service within the geographic market.

◆ When a rate is not published by *CMS* for the service, UnitedHealthcare uses a gap methodology established by *Optuminsight* and/ or a third party vendor that uses a relative value scale. The relative value scale is usually based on the difficulty, time, work, risk and resources of the service. If the relative value scale currently in use becomes no longer available, UnitedHealthcare will use a

comparable scale(s). UnitedHealthcare and *Optuminsight* are related companies through common ownership by *UnitedHealth Group.* Refer to UnitedHealthcare's website at **www.myuhc.com** for information regarding the vendor that provides the applicable gap fill relative value scale information."

The schedule of benefits, under "covered health services" provides that "The amount payable by the plan based on eligible expenses" for non-network lab testing will be covered at "60% after you meet the annual deductible" (Exhibit B, pages 14-15).

35.    Exhibit C is the excerpted SPD for Tesla that was provided to Cleanquest by United.  The schedule of benefits, under "covered health services" provides that "The amount payable by the plan based on eligible expenses" for non-network lab testing will be covered at "70% after you meet the annual deductible" (Exhibit C, page 15) .

36.    Defendants claim they have no obligation to provide plan documents. However, the express terms of the plans belie that contention. Exhibit D is the complete Tesla plan document. Under "Section 16- Important Administrative Information: ERISA", the plan States at Exhibit D, page 165, that one of the rights of the plan participants is to:

"Obtain copies of all Plan documents and other Plan information, including insurance contracts and collective bargaining agreements (if applicable), and updated Summary Plan Descriptions, by writing to the Plan Administrator. The Plan Administrator may make a reasonable charge for copies. Requests for available plan documents should be sent to the address provided under *How to Appeal a Denied Claim* in Section 9, *Claims Procedures.*"

Section 9 under *How to Appeal a Denied Claim* referred to above, states page 94 :

"You or your authorized representative may send a written request for an appeal to: UnitedHealthcare – Appeals P.O. Box 740816. Atlanta, Georgia 30374-0816"

- 20 -

In its response to the Plaintiff's plan document request, United omitted the sections of the Tesla plan document that clearly indicated that United had a contractual obligation to provide the plan document and an obligation under ERISA to do so. As alleged herein, United has repeatedly refused to provide plan documents and persists in that course of conduct to date as evidenced by the allegations of paragraph 31 and Exhibits Z and AA.

37.     Plaintiff submitted proper claims for the patients and claims identified on Exhibit A each on industry standard health insurance claim form 1500 approved by the National Uniform Claim Committee. The instructions for completing that form are attached as Exhibit W, and state in relevant part (page 3):

"**INSTRUCTIONS:** In 24B, enter the appropriate two-digit code from the Place of Service Code list for each item used or service performed. The Place of Service Codes are available at: www.cms.gov/Medicare/Coding/place-of-service-codes/Place_of_Service_Code_Set.html."

A true and correct copy of the CMS place of service code chart is attached hereto as Exhibit S. As can be seen from the chart (page 10) the place of service code for independent laboratory testing is code 81 for: "A laboratory certified to perform diagnostic and/or clinical tests independent of an institution or a physician's office."

Nevertheless, Defendants insist that Plaintiff use a place of service code different than prescribed by the billing form 1500 instructions from NUCC and CMS.

38.     Plaintiff made proper appeals for the claims at issue herein after they were underpaid or denied. By way of representative example, Exhibit G also has an appeal letter at pdf pages 20-25 which shows that Plaintiff submitted a proper appeal which Defendant failed to act upon. Part of this appeal letter is an AOB/POA which is representative of the AOB/POA forms for the patients with claims at issue in this case.

This appeal letter is a representative example of the appeals submitted for the subject patients. Exhibit G also includes a United Healthcare request for reconsideration form completed by Plaintiff (Exhibit G, page 21). An appeal log is provided in Exhibits H-R. Also, Exhibit BB is a compilation of additional appeal documents submitted for Patient 164-KW.

39.     In many cases Defendants ignored or refused to respond to Plaintiff's appeals. In others the Defendants refused to change the claim decisions even though the claim adjudication was clearly wrong. By way of example, Exhibit G also has an explanation of benefits form which shows that the claims were being denied on the basis that "This service is not reimbursable for this provider in this place of service" (Exhibit G, at page 12, note QH). As alleged herein, Defendants denials are clearly wrong and contrary to industry standards as defined by the National Uniform Claims Committee, of which the Defendants are members and contributors, and the CMS prescribed place of service code for independent laboratories. Despite the Defendant place of service code denials, the Defendant pays other dates of service for the same episode of care with a place of service 81. See for example Exhibit L, at pages 14-17, Exhibit M at pages 12-19, and Exhibit N at pages 10-13.

40.     HA, patient 9, received clinical drug screens during an episode of care that included dates of service from 6/09/2020 through 05/19/2022. Cleanquest provided all requested medical records and exhausted all UnitedHealthcare appeals. However, Defendants paid claims at disparate rates and denied many other claims for a variety of reasons in conflict with the plan document. Exhibit H is a document compilation for HA, including plan excerpts, claim forms, and EOBs which show coverage for non-network laboratory testing based on applicable plan excerpts, proper billing for the testing, and erratic claim payments and/or denials. As with other patients identified herein, EOBs for Patient HA show denials based on place of service code. There is also an appeal log which shows that the appeals were exhausted under the Defendants internal review process.

41.    KW, patient 164 received clinical drug screens during an episode of care that included dates of service from 5/19/2021 through 12/21/2021. Cleanquest provided all requested medical records and exhausted all UnitedHealthcare appeals. However, Defendants paid claims at disparate rates and denied many other claims for a variety of reasons in conflict with the plan document. Exhibit I is a document compilation for CA, including plan excerpts, claim forms, and EOBs which show coverage for non-network laboratory testing based on applicable plan excerpts, proper billing for the testing, and erratic claim payments and/or denials. There is also an appeal log which shows that the appeals were exhausted under the Defendants internal review process. As a further representative example of the efforts Plaintiff made to appeal claims, Exhibit BB is a compilation of additional appeal documents for KW, patient 164.

42.    AW, patient 158, received clinical drug screens during an episode of care that included dates of service from 10/12/2020 through 07/05/2021. Cleanquest provided all requested medical records and exhausted all UnitedHealthcare appeals. However, Defendants did not pay any claims as all were denied for place of service. Exhibit J is a document compilation for AW, including plan excerpts, claim forms, and EOBs which show coverage for non-network laboratory testing based on applicable plan excerpts, proper billing for the testing, and claim denials. There is also an appeal log which shows that the appeals were exhausted under the Defendants internal review process.

43.    JV, patient 154, received clinical drug screens during an episode of care that included dates of service from 11/20/2022 through 12/19/2022. Cleanquest provided all requested medical records and exhausted all UnitedHealthcare appeals. United denied all claims for place of service in conflict with the plan document. Exhibit K is a document compilation for JV, including plan excerpts, claim forms, and EOB's which show coverage for non-network laboratory testing based on applicable plan excerpts, proper billing for the testing, and claim denials. There is also an appeal

- 23 -

log which shows that the appeals were exhausted under the Defendants internal review process.

44.    CA, patient 10, received clinical drug screens during an episode of care that included dates of service from 5/21/2021 through 11/22/2021. Cleanquest provided all requested medical records and exhausted all UnitedHealthcare appeals. UnitedHealthcare paid claims at disparate rates and denied many other claims for a variety of reasons including QH: "This service is not eligible for reimbursement at this place of service."  Exhibit L is a document compilation for CA, including plan excerpts, claim forms, and EOBs which show coverage for non-network laboratory testing based on applicable plan excerpts, proper billing for the testing, and erratic claim payments and/or denials. There is also an appeal log which shows that the appeals were exhausted under the Defendants internal review process.

45.    MM, patient 104, received clinical drug screens during an episode of care that included dates of service from 11/20/2022 through 12/19/2022. Cleanquest provided all requested medical records and exhausted all UnitedHealthcare appeals. UnitedHealthcare denied some claims for place of service in conflict with the plan document, while paying other claims for the same episode of care, same plan year. Exhibit M is a document compilation for MM, including plan excerpts, claim forms, and EOBs which show coverage for non-network laboratory testing based on applicable plan excerpts, proper billing for the testing, and erratic claim payments and/or denials. There is also an appeal log which shows that the appeals were exhausted under the Defendants internal review process.

46.    LB, patient 14, received clinical drug screens during an episode of care that included dates of service from 5/27/2022 through 07/20/2022. Cleanquest provided all requested medical records and exhausted all UnitedHealthcare appeals. UnitedHealthcare paid claims at disparate rates and denied other claims for a variety of reasons in conflict with the plan document. Exhibit N is a document compilation for LB, including plan excerpts, claim forms, and EOBs which show coverage for

non-network laboratory testing based on applicable plan excerpts, proper billing for the testing, and erratic claim payments and/or denials. There is also an appeal log which shows that the appeals were exhausted under the Defendants internal review process.

47.    ZB, patient 19, received clinical drug screens during an episode of care that included dates of service from 8/25/2021 through 12/30/2021. Cleanquest provided all requested medical records and exhausted all UnitedHealthcare appeals. UnitedHealthcare paid 2 claims at disparate rates and denied all other claims for "QH: This service is not eligible for reimbursement at this place of service." Exhibit O is a document compilation for ZB, including plan excerpts, claim forms, and EOBs which show coverage for non-network laboratory testing based on applicable plan excerpts, proper billing for the testing, and erratic claim payments and/or denials. There is also an appeal log which shows that the appeals were exhausted under the Defendants internal review process.

48.    AM, patient 98, received clinical drug screens during an episode of care that included dates of service from 1/24/2022 through 6/13/2022. Cleanquest provided all requested medical records and exhausted all UnitedHealthcare appeals. UnitedHealthcare paid 3 claims at $31.07 and denied most other claims for this service is not eligible for reimbursement at this place of service. Exhibit P is a document compilation for AM, including plan excerpts, claim forms, and EOBs which show coverage for non-network laboratory testing based on applicable plan excerpts, proper billing for the testing, and erratic claim payments and/or denials. There is also an appeal log which shows that the appeals were exhausted under the Defendants internal review process.

49.    HB, patient 12 received clinical drug screens during an episode of care that included dates of service from 7/13/2022 through 8/05/2022. Cleanquest provided all requested medical records and exhausted all UnitedHealthcare appeals. UnitedHealthcare paid 1 claim at $31.07 and denied most other claims for this service

is not eligible for reimbursement at this place of service. Exhibit Q is a document compilation for HB, including plan excerpts, claim forms, and EOBs which show coverage for non-network laboratory testing based on applicable plan excerpts, proper billing for the testing, and erratic claim payments and/or denials. There is also an appeal log which shows that the appeals were exhausted under the Defendants internal review process.

50.    MH, patient 73, received clinical drug screens during an episode of care that included dates of service from 1/04/2021 through 12/13/2021. Cleanquest provided all requested medical records and exhausted all UnitedHealthcare appeals. UnitedHealthcare paid 1 claim at $ 3450.00, 1 claim at $31.07, and denied most other claims for this service is not eligible for reimbursement at this place of service. Exhibit R is a document compilation for MH, including plan excerpts, claim forms, and EOBs which show coverage for non-network laboratory testing based on applicable plan excerpts, proper billing for the testing, and erratic claim payments and/or denials. There is also an appeal log which shows that the appeals were exhausted under the Defendants internal review process.

51.    Plaintiff has repeatedly requested copies of the ERISA plans for the subject patients, both before and after the filing of this action, and Defendant has failed to do so, with a few exceptions. While Defendants claim they have no obligations to provide plan documents, in United's letter to Cleanquest attached as part of Exhibit G, United provides excerpts of an SPD which shows the coverage for lab testing at 70% of the eligible expense. Exhibit G shows that Defendants have the ability to respond to plan requests by Cleanquest, yet they chose to do so in a very limited number of cases, even though the plans expressly require Defendants to do so in the role as plan administrator, as made clear in the Tesla plan attached hereto as Exhibit D and quoted in paragraph 36 herein.

52.    Defendants have suggested during the course of this litigation that Plaintiff could obtain plan documents from the Department of Labor, as plans are

required to file SPDs with the DOL. That is not the case. While EBSA provides that Plan sponsors are required to automatically provide copies of these documents to plan participants upon enrollment and upon written request of a plan participant or beneficiary, the Department of Labor requirement that Plans file SPDs with EBSA was eliminated in 1997. Please see Exhibit T the DOL/EBSA circular on point which provides in part at page 2:

> "The Taxpayer Relief Act of 1997 eliminates the requirement of plans to file SPDs and SMMs with EBSA. SPDs and SMMs filed with the agency before that date may be on file and are available upon request if they are maintained. If a plan participant or beneficiary wishes a more recent copy of the SPD or SMM, the agency will request a copy from the plan administrator."

53.    Defendant has also stated that for some plans certificates of coverage are available from the secretary of state. This is not the case in California where Plaintiff was informed by both the DOI and DMHC that certificates of coverage are not on file or available to the public, except possibly upon the filing of a complaint with the department. Plaintiff has also inquired of treatment centers that refer patients to Plaintiff for laboratory testing and has been informed that those providers do not have copies of plans. All of these extraordinary efforts by Plaintiff are unnecessary as Defendants clearly have the ability and obligation to provide plan documents.

54.    Defendants have the ability to provide plan documents, as evidenced by Exhibit G, as well as in Exhibit K where a full SPD was provided. Moreover, as alleged in paragraph 36, the Defendants require that requests for plan documents be directed to them. Their refusal to provide plan documents is inexcusable, especially in view of the Assignment/POAs that authorize Cleanquest to request and obtain plan documents (Exhibit E, at page 2):

> Under each and every appointment, designation, or assignment, the Facility shall have the right, power, authority, or standing to obtain plan documents

– including without limitation the summary plan description, certificate of
coverage, or other document setting forth the terms of the plan or under
which the plan is operated – to the same extent I myself am entitled under
law to obtain said documents.

The Defendants refusal to provide plan documents is arbitrary and capricious and
in violation of 29 USC section 1132(c)(1) which provides for a daily civil penalty for
non-compliance.

55.    In addition, the erratic and inconsistent payments (or nonpayment) of
claims as alleged herein shows the Defendants are in violation of 29 CFR § 2560.503-
1 which specifies standards for ERISA plans and requires under subsection (b)(5) that;
"The claims procedures contain administrative processes and safeguards designed to
ensure and to verify that benefit claim determinations are made in accordance with
governing plan documents and that, where appropriate, the plan provisions have been
applied consistently with respect to similarly situated claimants."

56.    Not only is the conduct of Defendants in violation of 29 CFR §
2560.503-1, but the Defendants are in violation of their own internal procedures for
benefit determination procedures which explicitly provide that if a United
reimbursement policy conflicts with a plan document, the plan document controls.
Defendants attempts to deny the claims herein are capricious and contrary to the terms
of the plans which cover those services.  Defendants "Commercial Medical & Drug
Policies Terms and Conditions", a copy of which is attached hereto as Exhibit U,
states in relevant part:


"Benefit coverage for health services is determined by the member
specific benefit plan document, such as a Certificate of Coverage, Schedule
of Benefits, or Summary Plan Description, and applicable laws that may
require coverage for a specific service. The member specific benefit plan
document identifies which services are covered, which are excluded, and
which are subject to limitations. In the event of a conflict, the member
specific benefit plan document supersedes these policies and guidelines."

Defendants use and misapplication of internal policies created by them, which are not part of the plan documents, violates legal standards, their own standards and constitutes arbitrary and capricious conduct.

57.    In addition to deliberately demanding that Plaintiff use an inappropriate, arbitrary place of service code, Defendants violated ERISA by repeatedly requesting medical records, which Plaintiff provided, but then disregarding the medical records and denying claims on the basis that medical records were not provided. This is reflected in Exhibit X which is a document compilation for IM- Patient 122 who received clinical drug screens during an episode of care that included dates of service from 08/02/2021 through 08/23/2021. Cleanquest provided all requested medical records and exhausted all UnitedHealthcare appeals. UnitedHealthcare did not pay any of the claims and never provided claim adjudication after receiving medical records. Exhibit X includes plan excerpts, claim forms, and EOBs which show coverage for non-network laboratory testing based on applicable plan excerpts, proper billing for the testing, and provision of medical records and appeals. There is also a log which documents Cleanquest's responses to records requests which shows that the appeals were exhausted under the Defendants internal review process. This is also an example of how United ignored its own appeal process, and in many instances rendered it futile as United simply ignored the information validating claims.

58.    Despite the Plaintiff properly making a claim for benefits for clinical laboratory out-of-network services under the plan's terms, and exhausting the plan's administrative appeals process, the Plaintiff was denied the benefit by the Defendants. The Defendants have failed to provide accurate materials summarizing its group health plan, provide benefits and payment according to the underlying plan document, follow the procedural rules governing the administration of benefits, and to exercise its fiduciary duties of loyalty and due care. The Defendants have made out-of-network benefit reductions and adverse benefit determinations that were not authorized by the

plan documents, misrepresented plan information on the EOBs, refused to provide requested plan documents, and made erratic and improper payments of claims.

59.    As a direct and proximate result of the Defendant's conduct alleged herein which constitutes breach of contracts, breach of plan documents, refusal to apply plan terms and conditions to its evaluating and processing claims, refusal to respond to document requests, arbitrary and capricious conduct, breach of fiduciary duties, and other additional violations of 29 U.S.C. §1132, Plaintiff has suffered and will continue to suffer economic injury in fact as alleged herein in an amount according to proof at the time of trial, together with interest thereon at the legal rate. Plaintiff hereby demands payment of past benefits wrongfully withheld with interest thereon at the legal rate. Pursuant to 29 U.S.C. §1132(g) Plaintiff hereby requests attorney's fees and costs in connection with recovering benefits due and owing from the Defendants. Plaintiff also requests this court enter an order directing that the claims at issue be reprocessed using appropriate applicable standards which comply with ERISA, and additional equitable and injunctive relief as may be appropriate under the circumstances.  Plaintiff also requests this court enter appropriate orders sanctioning or levying fines on United for refusing to comply with Plaintiffs clearly properly authorized documentation and information requests, and for United's stonewalling and lack of cooperation in an effort to frustrate Plaintiff's attempts to have the claims processed and paid correctly.

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

1.    For general, special, restitutionary and compensatory damages according to proof.

2.    For prejudgment interest at the legal rate on amounts of benefits wrongfully withheld.

3.    For reasonable expenses incurred, including attorney's fees and other costs, according to proof.

4.    For repossessing of claims and/or other equitable and injunctive relief as the court may deem appropriate under the circumstances.

5.    For a daily civil penalty in the amount allowed by law for any and all refusals to provide requested plan documents pursuant to 29 USC section 1132(C)(1).

5.    For such other and further relief as the Court may deem just and proper under the circumstances.

Dated:  May 16, 2024              LAW OFFICE OF JOHN W. TOWER

                                  By:  */s/ John W. Tower*
                                       JOHN W. TOWER
                                       Attorney for Plaintiff
                                       CLEANQUEST, LLC

## JURY DEMAND

Plaintiff hereby demands a jury for all issues properly giving rise to the right to trial by jury.

Dated:  May 16, 2024              LAW OFFICE OF JOHN W. TOWER


                                  By:  */s/ John W. Tower*
                                       JOHN W. TOWER
                                       Attorney for Plaintiff
                                       CLEANQUEST, LLC

Third Amended Complaint – CLEANQUEST v. UNITED Case No.: 8:23-CV-00148-JWH-ADS

1
2

## CERTIFICATE OF SERVICE

3

4        The undersigned hereby certifies that a true and correct copy of the above and

5    foregoing document has been served on May 16, 2024, to all counsel of record who

6    are registered CM/ECF users via the Courts CM/ECF system. Any counsel record

7    who are not registered through the courts CM/ECF system will be served by email or

    other means permitted by court rules.

8
9
10
11                              */s/ John W. Tower*
12                              JOHN W. TOWER
13                              Attorney for Plaintiff
                                CLEANQUEST, LLC
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Third Amended Complaint – CLEANQUEST v. UNITED Case No.: 8:23-CV-00148-JWH-ADS