Kent J. Schmidt (SBN 195969)
*Schmidt.kent@dorsey.com*
**DORSEY & WHITNEY LLP**
600 Anton Blvd., Suite 2000
Costa Mesa, CA 92626
Tel: (714) 800-1400; Fax: (714) 800-1499

Nicholas J. Pappas*
*pappas.nicholas@dorsey.com*
**DORSEY & WHITNEY LLP**
51 W 52nd Street,
New York, NY 10019-6119
Tel: (212) 415-9200; Fax: (212) 953-7201

Alan J. Iverson*
*iverson.alan@dorsey.com*
**DORSEY & WHITNEY LLP**
50 S. 6th Street, #1500
Minneapolis, MN, 55402
Tel: (612) 340-2600; Fax: (612) 340-2868

Attorneys for UnitedHealthcare Insurance Company;
United HealthCare Services, Inc.; and
United Behavioral Health

*Admitted pro hac vice

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| CLEANQUEST, LLC, a California limited liability company<br><br>    Plaintiff,<br><br>v.<br><br>UNITEDHEALTHCARE INSURANCE COMPANY, a Connecticut corporation; UNITED HEALTHCARE SERVICES, INC., a Minnesota corporation; and UNITED BEHAVIORAL HEALTH, a California corporation, and DOES 1 through 10, inclusive<br><br>    Defendants. | CASE NO. 8:23−CV−00148−JWH−JDE<br>Assigned to Judge John W. Holcomb<br><br>**UNITED'S REPLY BRIEF IN SUPPORT OF MOTION TO AMEND ANSWER TO ASSERT A COUNTERCLAIM**<br><br>Date: January 30, 2026<br>Time: 9:00 am<br>Courtroom: 9D |

## INTRODUCTION

Cleanquest brought an ERISA mass action to recover for *thousands* of claims for health benefits relating to 166 individual members. (ECF No. 39, Third Amended Complaint ("TAC").) When its counsel admitted that Cleanquest was not collecting patient co-payments, co-insurance, or deductibles (collectively, "member responsibility amounts") as it was supposed to under the United members' plan terms, United investigated those 166 members' claims to determine whether it should bring a counterclaim. United then worked diligently to file the present motion.

Cleanquest complains that United's proposed counterclaim would change the landscape of this litigation, but that concern is overblown. United's proposed counterclaim involves the same discovery as Cleanquest's case-in-chief, and Cleanquest's failure to collect member responsibility amounts was already at issue in this case given that United asserted affirmative defenses raising that issue. If Cleanquest needs any additional discovery related to United's proposed counterclaim, it should have already sought that information.

Further, nothing bars Cleanquest from seeking additional time to conduct that discovery. United would not oppose a motion to modify the scheduling order, and delay of the proceedings alone does not justify denying United's motion to amend. As explained below, United's proposed counterclaim is not futile, and justice requires permitting United to assert its valid claims against Cleanquest.

## ARGUMENT

### I. Cleanquest Will Not be Prejudiced by United's Amendment.

Cleanquest's prejudice argument primarily rests on its contention that deadlines in this matter will need to be continued if the Court grants United's amendment. But no additional discovery is needed to address United's counterclaims. Existing discovery includes members' plan documents, explanation of benefits and provider remittance advice forms, and claims data. United anticipates producing additional administrative records in the coming days. (Second Declaration

of Alan J. Iverson ("Iverson 2d Decl."), ¶ 8.) Cleanquest produced nothing in discovery showing that it collects member responsibility amounts, and it is undisputed that Cleanquest failed to do so. That Cleanquest argues about the legal significance of that fact does not require additional discovery. These circumstances are distinguishable from Cleanquest's cases, where needing to re-open discovery justified denying motions to amend. (*See* Opp'n at 6-7.)

Cleanquest acknowledges that United's affirmative defenses already cover the same issues as United's proposed counterclaims. (Opp'n at 9.) Thus, Cleanquest could have already requested any discovery it needs and could have already retained an expert to opine on these issues. *Rosetta v. Paycom Software*, 2020 U.S. Dist. LEXIS 120915, at *8 (C.D. Cal. Apr. 17, 2020) ("Plaintiff can seek discovery regarding the purported factual basis for [affirmative] defenses"). United bears the burden of proof on its affirmative defenses just as it does on a counterclaim. *Id.* at *9. The difference is that United now seeks damages, but that does not "fundamentally alter the nature of the case" as Cleanquest contends. *See Underwood v. O'Reilly Auto Enterprises*, LLC, 342 F.R.D. 338, 344 (D. Nev. 2022) (proposed amendment was "adding more detail" to existing claims, rather than asserting new theories, which "further militate[d] against a finding of prejudice"); *Hui Cai v. CMB Exp. LLC*, 2024 U.S. Dist. LEXIS 183437, *11-12 (C.D. Cal. Apr. 9, 2024) (permitting amendment where "the addition of punitive damages relies on the same theories advanced throughout this litigation").

Similarly, Cleanquest's argument that permitting United to assert counterclaims would require additional Rule 30(b)(6) depositions falls flat, because Cleanquest is already able to depose a corporate representative for each of the three United entities named as defendants. Fed. R. Civ. P. 30(b)(6) ("In its notice or subpoena, a party may name as the deponent a public or private corporation…"). Cleanquest has not noticed these depositions and, if it chooses, can seek 30(b)(6) testimony regarding its non-collection of member responsibility amounts.

Courts freely grant leave to amend at late stages of litigation where new facts supply grounds for the amendment. *Extreme Reach, Inc. v. Priority Workforce, Inc.*, 2018 LX 27453 (C.D. Cal. Sep. 25, 2018) (permitting amendment at the close of discovery) ("the mere fact that discovery may have to be reopened does not, in and of itself, result in undue prejudice"); *Rain Gutter Pros, Ltd. Liab. Co. v. MGP Mfg., Ltd. Liab. Co.*, 2015 U.S. Dist. LEXIS 141340, at *5-6 (W.D. Wash. Oct. 15, 2015) (permitting amendment of counterclaim to add a new party after joinder deadline when new evidence was revealed in discovery). To the extent Cleanquest seeks more time, the current schedule can be modified. That result would promote justice more than refusing United the opportunity to assert its legal rights based on Cleanquest's non-collection of member responsibility amounts. *See Entangled Media, LLC v. Dropbox Inc.*, 348 F.R.D. 649 (N.D. Cal. 2025) (allowing addition of counterclaim after amendment deadline passed). To hold otherwise would allow Cleanquest to benefit from its own wrongdoing and elevate form over substance.

Cleanquest's assertion that this case has already been delayed ignores its own role in these proceedings. Cleanquest appears to contend that United delayed this case by filing dispositive motions and then serving its Answer more than two years after the case was filed (*see* Opp'n at 2), but Cleanquest benefitted from those proceedings when it amended its complaint *three* times until some of its claims survived. The Court stayed discovery during the pendency of United's motions to dismiss. Moreover, Cleanquest recently decided to bring an identical case against UMR which is just beginning. *Cleanquest, Inc. v. UMR, Inc., et al.*, No. 8:25-cv-2541 (C.D. Cal.). Given the similarities between the cases, consolidation in the future may be appropriate.

In sum, Cleanquest will not be prejudiced by United's amending its answer. Further, any potential prejudice can be ameliorated by an amendment to the scheduling order, which United would not oppose.

## II. United Acted Diligently and in Good Faith in Seeking this Amendment.

Next, Cleanquest's counsel admitted that Cleanquest does not collect member responsibility amounts from patients during a meet and confer discussion on June 30, 2025. (ECF No. 82, ¶ 5.) After that discussion, United timely sought an extension of the trial date so that it could investigate a counterclaim and gather and analyze administrative records. (ECF No. 70.)

That investigation was time-consuming given the complexity of this case, which involves 166 members' plans and thousands of claims for benefits. (*See* ECF No. 39, App'x A.) That Cleanquest chose to bring each of these individual lawsuits as a mass action did not change United's obligation to review documents relating to each individual member. For each member, United had to determine whether the relevant plan document contained terms prohibiting non-collection of member responsibility amounts, whether the member exhausted his or her out of pocket maximum (such that member responsibility amounts should have been collected), and how much United paid Cleanquest as a result. (Iverson 2d Decl., ¶ 4.) That investigation required manual review of hundreds of plan documents, explanation of benefits forms, and provider remittance advice forms. (*Id.*, ¶ 5.)

Once United conducted its investigation, it had to determine whether it was economically feasible to move to bring a counterclaim. (*Id.*, ¶ 6.) Counsel needed to draft a motion to amend and proposed counterclaim, obtain client approval, and meet and confer with opposing counsel at least a week before filing United's motion. (*Id.*) United originally noticed the motion for the earliest available hearing date, January 16, 2026, but then agreed to continue the hearing date at Cleanquest's request. (*Id.*, ¶ 7; *see also* ECF No. ¶5.)

Cleanquest contends that United should have included a counterclaim in its original answer, given that United had a sufficient basis to assert affirmative defenses of fraud and failure to collect member responsibility amounts at that time. (Opp'n at 12.) This argument ignores the reality that affirmative defenses are pled before

1  discovery commences and only require fair notice of a party's defenses, as opposed
2  to the pleading standard applicable to counterclaims. *Francis v. Luna*, 2024 LX
3  292249, at *7 (C.D. Cal. Oct. 30, 2024) (discussing the "fair notice" standard
4  applicable to affirmative defenses). Here, Cleanquest's failure to produce responsive
5  documents or information discovery, Cleanquest's counsel's admission that it did not
6  collect member responsibility amounts, and the administrative records collected and
7  produced provided the factual support for United's counterclaim. *See Entangled*
8  *Media, LLC*, 348 F.R.D. at 655 ("waiting to amend a complaint or answer until a
9  strong evidentiary basis for the amended claims has been developed is preferable to
10 prematurely asserting those claims on the basis of a limited record"). These
11 circumstances are distinguishable from cases where a party "knew or should have
12 known" of facts raised in their original pleading. *See Patwardhan v. United States ex*
13 *rel. HHS*, 2014 U.S. Dist. LEXIS 36226, at *15 (C.D. Cal. Mar. 18, 2014) (cited in
14 Opp'n at 11) (involving motion to amend to add a new party).

15    Cleanquest further asserts that United has made a "clear effort to delay by
16 seeking to amend after a trial date has been set and extended once at United's
17 request," but admits that "[n]othing in the record" shows United acted in bad faith by
18 filing this motion. (Opp'n at 19.) United reiterates that it brings this motion in good
19 faith and without dilatory motive. Moreover, courts acknowledge that "delay alone
20 generally does not give rise to an inference of bad faith." *In re Mosaic LLM Litig.*,
21 2025 LX 118359, at *9 (N.D. Cal. June 25, 2025). As such, the Court should reject
22 Cleanquest's arguments regarding delay.

23 **III.   Amendment Will Not be Futile.**

24    As explained in United's opening memorandum, denying a motion to amend
25 based on futility is rare, particularly because Rule 15 has a more lenient standard than
26 Rule 12(b)(6). (Mem. at 4.) Indeed, United's proposed counterclaims are sufficiently
27 pled, and Cleanquest does not even attempt to distinguish United's authority where
28

courts have declined to dismiss similar allegations.[1]

### A. Fraud and Negligent Misrepresentation

United adequately pleads the "who, what, when, where, and how" of its fraud and negligent misrepresentation claims. United alleges that each time Cleanquest ("who") submits a claim to United without collecting member responsibility and while knowing the member's plan requires such collection ("what"), that conduct is fraudulent and misrepresents the appropriate billed charges on each claim. (*See, e.g.*, ECF No. 81-1, ¶¶ 74, 75, 80, 81.) United's allegations relate to each of the claims referenced in Cleanquest's TAC where the member's plan requires collection of member responsibility ("when"). (*See id.* ¶¶ 33, 48.) The relevant claims are submitted on CMS-1500 claim forms to United and must be accurate ("where" and "how"). (*Id.* ¶¶ 31-32.)

Courts have declined to dismiss similar allegations of fraud and negligent misrepresentation. *In re Unitedhealthcare*, 2023 U.S. Dist. LEXIS 62672, at *98-104 (C.D. Cal. Jan. 13, 2023) (declining to dismiss fraud and negligent misrepresentation claims involving failure to collect member responsibility amounts); *Nutrishare*, 2014 U.S. Dist. LEXIS 33904, at *6-14 (declining to dismiss similar allegations of fraud). Additionally, Cleanquest's cases are factually distinct. *See Bees v. Sunland Trading, Inc.*, 2024 U.S. Dist. LEXIS 165387 (E.D. Cal. Sep. 12, 2024) (involving an alleged conspiracy to import fake honey into the United States); *Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) (involving alleged securities fraud). Accordingly, United's fraud and negligent misrepresentation claims are not futile.

---

[1] ERISA does not preempt United's state law claims, because the claims do not require interpretation of plan terms, and they involve violations of duties that are completely independent of ERISA. *See Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*, 2014 U.S. Dist. LEXIS 33904, at *15-21 (E.D. Cal. Mar. 13, 2014) (declining to dismiss similar allegations on preemption grounds). In any event, Cleanquest does not base its futility argument on preemption. (Opp'n at 14 n.4.)

### B. Conversion

Cleanquest next asserts that United cannot state a claim for conversion, because United's claims are based on "overpayments." (Opp'n at 15-16.) The cases Cleanquest cites, *McKell* and its progeny, dismissed conversion claims based on alleged overpayments made directly from one party to another, but that is different from United's allegations here. *See McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1491-92, 49 Cal. Rptr. 3d 227 (2006); *Sandigo v. Ocwen Loan Servicing, LLC*, 2019 U.S. Dist. LEXIS 87309, at *61-62 (N.D. Cal. May 23, 2019); *Util. Consumers' Action Network v. Sprint Sols., Inc.*, 2008 U.S. Dist. LEXIS 34159, at *23-24 (S.D. Cal. Apr. 25, 2008). United is not claiming that Cleanquest directly overcharged United for a service and then wrongfully held onto those payments; United's allegation is that Cleanquest failed to collect amounts due from patients. United is seeking a "specific, identifiable sum" resulting from Cleanquest's failure to collect from members. *McKell*, 142 Cal. App. 4th at 1491. United's allegations are sufficient. *See In re Unitedhealthcare*, 2023 U.S. Dist. LEXIS 62672, at *104-06.

### C. Intentional Interference with Contractual Relations

Cleanquest further argues that United cannot assert an intentional interference with contractual relations claim, because United not a party to the contracts between its members and their group health plans. (Opp'n at 16-17.) However, United acts as a third-party administrator for self-funded plans and is authorized to cause payments to be made from the self-funded customer's assets. (ECF No. 81-1, ¶¶ 20, 22.); *see Rainbow Sandals, Inc. v. Liberty Mut. Ins. Co.*, 2015 U.S. Dist. LEXIS 186658, at *8-9 (C.D. Cal. Mar. 11, 2015) (discussing possibility that third party administrator can be liable for contract claim). Cleanquest's actions caused United members to breach their contractual obligations under the terms of their plans, which interferes with United's relationship with its members.

Moreover, as explained in United's proposed counterclaim, United incentivizes insureds to choose in-network providers by requiring higher member

responsibility payments for out-of-network services. (ECF No. 81-1, ¶¶ 26-28.) Cleanquest's failure to collect member responsibility amounts for out-of-network services thus hinders United's ability to encourage cost-effective use of healthcare through its contractual relationship with group health plans and its members. (*Id.*); *see also Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, 2016 U.S. Dist. LEXIS 185150, at *31-32 (D. Colo. July 13, 2016) (declining to dismiss similar intentional interference claim).

### D.  Unfair Competition Law

Cleanquest additionally asserts that United lacks standing to pursue a claim under California's Unfair Competition Law ("UCL") because United concedes that payments to providers are made from customer assets rather than United's assets. (Opp'n at 17.) This argument ignores that "a party may bring a UCL claim to recover assets it did not own, but over which it had legal control." *In re Unitedhealthcare*, 2023 U.S. Dist. LEXIS 62672, at *110 (citing *Armstrong v. Kubo & Co.*, 88 Cal. App. 331, 334, 263 P. 365 (1928); *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323, 120 Cal. Rptr. 3d 741, 246 P.3d 877 (2011)). Here, United seeks damages based on its legal control over customer assets. (*See, e.g.*, ECF No. 81-1, ¶ 2-3, 22, 27-28.) Accordingly, United has standing to pursue a UCL claim.

### E.  ERISA Claims for Equitable Relief

Finally, Cleanquest argues that United's claim for restitution is unavailable, because United is seeking restitution of payments out of general assets rather than a particular fund, and United's requests for injunctive and declaratory relief are duplicative of the restitution claim. (Opp'n at 17-19.) ERISA permits claims for "appropriate equitable relief" under § 502(a)(3), and United seeks restitution, an injunction, and declaratory relief. Cleanquest's restitution argument must fail, because "United does not seek an 'undifferentiated component of a larger fund,' but rather the entirety of benefits it paid for all plans in which [Cleanquest] waived or did not otherwise collect Member Responsible Amounts." *In re Unitedhealthcare*,

2023 U.S. Dist. LEXIS 62672, at *78. This is sufficient to state a claim for restitution. *See id.* As such, United has viable claims for equitable relief under ERISA.

## CONCLUSION

For these reasons, United respectfully requests that the Court grant its motion to amend its Answer to the TAC to assert a counterclaim against Cleanquest.

Dated: January 16, 2026

By: /s/ *Alan J. Iverson*

Kent J. Schmidt
schmidt.kent@dorsey.com
DORSEY & WHITNEY LLP
600 Anton Blvd., Suite 2000
Costa Mesa, CA 92626
Tel: (714) 800-1400;
Fax: (714) 800-1499

Nicholas J. Pappas*
pappas.nicholas@dorsey.com
DORSEY & WHITNEY LLP
51 W 52nd Street,
New York, NY 10019-6119
Tel: (212) 415-9200;
Fax: (212) 953-7201

Alan J. Iverson*
iverson.alan@dorsey.com
DORSEY & WHITNEY LLP
50 S. 6th Street, #1500
Minneapolis, MN, 55402
Tel: (612) 340-2600;
Fax: (612) 340-2868

**Admitted pro hac vice*

Attorneys for Defendants
UnitedHealthcare Insurance Company;
United HealthCare Services, Inc.; and
United Behavioral Health

9

**UNITED'S REPLY BRIEF IN SUPPORT OF MOTION TO AMEND ANSWER**
**8:23−CV−00148−JWH−JDE**

2023 U.S. Dist. LEXIS 62672, at *78. This is sufficient to state a claim for restitution. *See id.* As such, United has viable claims for equitable relief under ERISA.

## CONCLUSION

For these reasons, United respectfully requests that the Court grant its motion to amend its Answer to the TAC to assert a counterclaim against Cleanquest.

Dated: January 16, 2026

By: /s/ *Alan J. Iverson*

Kent J. Schmidt
schmidt.kent@dorsey.com
DORSEY & WHITNEY LLP
600 Anton Blvd., Suite 2000
Costa Mesa, CA 92626
Tel: (714) 800-1400;
Fax: (714) 800-1499

Nicholas J. Pappas*
pappas.nicholas@dorsey.com
DORSEY & WHITNEY LLP
51 W 52nd Street,
New York, NY 10019-6119
Tel: (212) 415-9200;
Fax: (212) 953-7201

Alan J. Iverson*
iverson.alan@dorsey.com
DORSEY & WHITNEY LLP
50 S. 6th Street, #1500
Minneapolis, MN, 55402
Tel: (612) 340-2600;
Fax: (612) 340-2868

**Admitted pro hac vice*

Attorneys for Defendants
UnitedHealthcare Insurance Company;
United HealthCare Services, Inc.; and
United Behavioral Health

## **LOCAL RULE 11.6-2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants UnitedHealthcare Insurance Company, United HealthCare Services, Inc., and United Behavioral Health, certifies that its Memorandum of Points and Authorities contains 2,616 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 16, 2026

By: _/s/ Alan J. Iverson_

Kent J. Schmidt
schmidt.kent@dorsey.com
DORSEY & WHITNEY LLP
600 Anton Blvd., Suite 2000
Costa Mesa, CA 92626
Tel: (714) 800-1400;
Fax: (714) 800-1499

Nicholas J. Pappas*
pappas.nicholas@dorsey.com
DORSEY & WHITNEY LLP
51 W 52nd Street,
New York, NY 10019-6119
Tel: (212) 415-9200;
Fax: (212) 953-7201

Alan J. Iverson*
iverson.alan@dorsey.com
DORSEY & WHITNEY LLP
50 S. 6th Street, #1500
Minneapolis, MN, 55402
Tel: (612) 340-2600;
Fax: (612) 340-2868

*Admitted pro hac vice

Attorneys for Defendants
UnitedHealthcare Insurance Company;
United HealthCare Services, Inc.; and
United Behavioral Health

# PROOF OF SERVICE

## STATE OF MINNESOTA, COUNTY OF HENNEPIN

I am employed in the City of Minneapolis, County of Hennepin, State of Minnesota. I am over the age of 18 years and not a party to the within action. My business address is 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402. On January 16 2026, I served the documents named below on the parties in this action as follows:

**DOCUMENT(S) SERVED:** UNITED'S REPLY BRIEF IN SUPPORT OF MOTION TO AMEND ANSWER TO ASSERT A COUNTERCLAIM

**SERVED UPON:**

JOHN W. TOWER, ESQ. #106425
LAW OFFICE OF JOHN W. TOWER
2211 Encinitas Blvd., 2nd Floor
Encinitas, CA 92024
(760) 436-5589 / Fax (760) 479-0570
Towerlawsd@gmail.com

RICHARD T. COLLINS, ESQ #166577
ARNALL GOLDEN GREGORY LLP
2100 Pennsylvania Avenue NW, Ste. 350S
Washington, DC 20037
Rich.collins@agg.com

Attorneys for Plaintiff Cleanquest, LLC

☐ (BY MAIL) I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Costa Mesa, California. I am readily familiar with the practice of Dorsey & Whitney LLP for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.

☒ (BY FEDERAL EXPRESS) I am readily familiar with the practice of Dorsey & Whitney LLP for collection and processing of correspondence for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express for overnight delivery.

☐ (BY ELECTRONIC MAIL) The above-referenced document was transmitted in "pdf" format by electronic mail ("e-mail") to each of the e-mail addresses listed, and no errors were reported.

☒ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court, at whose direction this service was made.

Executed on January 16, 2026 at Minneapolis, Minnesota.

*/s/ Lori Kaemmer*
Lori Kaemmer